Lancaster County Assessor/Register of Deeds
I, Norman H. Agena, do hereby certify that this is a
true and correct copy of the document as recorded in
the office of said Register of Deeds.
Date: 05/21/2014

Norman H. Agena
Assessor/Register of Deeds
Lancaster County, County, NE

```
Inst # 2011021271  Thu May 12 16:31:14 CDT 2011
Filing Fee: $84.00    Stamp Tax: $0.00  Exempt 2 cppckg
Lancaster County, NE Assessor/Register of Deeds Office   QCDEED
                                                Pages 13
```

## QUITCLAIM DEED

KNOW ALL MEN BY THESE PRESENTS, that **BNSF RAILWAY COMPANY**, a Delaware corporation, of 2500 Lou Menk Drive, Fort Worth, Texas 76131-2830, hereinafter called "**Grantor**", for Ten and No/100 Dollars ($10.00) and other good and valuable consideration, to it duly paid, the receipt whereof is hereby acknowledged, has quitclaimed, and by these presents does quitclaim, without any covenants of warranty whatsoever and without recourse to Grantor, its successors and assigns, unto the **WEST HAYMARKET JOINT PUBLIC AGENCY**, a political subdivision of the State of Nebraska created by the Nebraska Joint Public Agency Act, Neb. Rev. Stat. S 13-2501 et seq, whose mailing address is 555 South 10th Street, Lincoln, Nebraska 68508 Attn: City Attorney, hereinafter called "**Grantee**", and to its successors and assigns forever, all its right, title, interest, estate, claim and demand, if any, both at law and in equity of, in and to that real property (exclusive of any improvements thereon), and all of Grantor's reversionary and/or other real estate claims, ordinance rights, licenses, easements, and interest in and to all vacated streets and alleys in, on, across, abutting or adjoining such real property subject, however, to all existing interests, including but not limited to all reservations, rights-of-way and easements of record or otherwise, located in the County of Lancaster, State of Nebraska, hereinafter called "**Property**", being more particularly described on **EXHIBIT A** attached hereto and by this reference made a part hereof.

Grantee's interest shall be subject to a reservation to Grantor of:

    1.    The Grantor Reserved Rights (defined below), which Grantor Reserved Rights may be exercised by Grantor as deemed necessary or advisable by Grantor and without charge and without notification to Grantee; provided, however, Grantor's exercise of the Grantor Reserved Rights shall not materially interfere with Grantee's and Grantee's successor's and permitted assign's use and occupancy of the Property. The Grantor Reserved Rights shall be binding upon Grantee and its successors and assigns.

    2.    The following interests in the Property, which are referred to herein collectively as the "**Grantor Reserved Rights**":

    (i)    All existing longitudinal easements and licenses for pipelines, telecommunications (including without limitation, fiber optic cables or lines,

BNSF Lincoln, Lancaster County, NE            1

NT-Com CITY003

$84.00

EXHIBIT
1

communications equipment, control systems and various types of cables), power, water or other utilities with third parties and all easements and licenses that cross multiple properties (collectively, the "**Longitudinal Agreements**") and rights to the revenues or fees (collectively, "**License Fees**") attributable to any Longitudinal Agreements involving Grantor or the Property of whatever nature. Grantor and Grantee agree that Grantor shall reserve 100% of its rights to License Fees and this Deed shall not alter or otherwise affect such rights.

(ii)     For any or all personal property located on the Property that is necessary for Grantor's railroad operations or otherwise, as determined by Grantor in Grantor's sole discretion and the remaining personal property does not materially interfere with Grantee's intended use of the Property, as determined by Grantee in Grantee's sole discretion, Grantor may request that Grantee, at Grantee's election, either (i) permit Grantor to enter upon the Property, upon notice to Grantee, to remove and relocate such improvements to a location off of the Property, such removal and relocation to be at Grantee's sole cost and expense, or (ii) promptly obtain and for no monetary consideration, a permanent easement from Grantee to Grantor in form and substance acceptable to Grantor for ingress and egress, site preparation, construction, reconstruction, inspection, use, operation, maintenance, repair and replacement (collectively, the "**Operation**") of such improvements. If Grantor elects to remove and relocate such improvements, then Grantor shall have a reasonable amount of time for the Operation of such improvements prior to such removal and relocation.

(iii)    For any or all personal property located on the Property that is necessary for Grantor's railroad operations or otherwise, as determined by Grantor in Grantor's sole discretion, and the remaining personal property materially interferes with Grantee's intended use of the Property, as determined by Grantee in Grantee's sole discretion, Grantor shall have the right to enter upon the Property, upon notice to Grantee, to remove and relocate such improvements to a location off of the Property, such removal and relocation to be at Grantee's sole cost and expense. If Grantor elects to remove and relocate such improvements, then Grantor shall have a reasonable amount of time for the Operation of such improvements prior to such removal and relocation.

3.    The right of Grantor to quitclaim to Grantee via a bill of sale all of Grantor's improvements left on the Property after the date of this Deed which are not covered by the above-described Grantor Reserved Rights. Grantor shall have no further obligations with respect to such improvements upon such quitclaim.

4.    The right of Grantor to pull up all tracks and ties from tracks 204, 205, 309, 310, 320, 321, 322, and 323, and a portion consisting of eight hundred (800) feet of track 324 (collectively, the "**Removed Tracks & Ties**") within ten (10) days after the date of this Deed, stockpile such Removed Tracks & Ties, and load such Removed Tracks & Ties onto cars supplied by Grantor for shipment to and disposal at an appropriate disposal site.

Grantee covenants and agrees as follows:

(a) Any improvements constructed or altered on the Property after the date of this Deed shall be constructed or altered in such a manner to provide adequate drainage of water away from any of Grantor's railroad tracks on nearby property, except as may be expressly provided under a separate written agreement between Grantor and Grantee with regards to storm water mitigation.

(b) Notwithstanding anything else in this Deed to the contrary, Grantee acknowledges and affirms that Grantor may not hold fee simple title to the Property, that Grantor's interest in all or part of the Property, if any, may rise only to the level of an easement for railroad purposes. Grantee accepts Grantor's interest in the Property, if any, on this basis and expressly releases Grantor, its successors and assigns from any claims that Grantee or its successors may have as a result of an abandonment of the line of rail running over or adjacent to any portion of the Property. In light of Grantor's disclosure that it may not hold a fee interest in all or part of the Property, Grantee agrees to indemnify, defend and hold Grantor harmless from any suit or claim for damages, punitive or otherwise, expenses, attorneys' fees, or civil penalties that may be imposed on Grantor as the result of any person or entity claiming an interest in any portion of the Property or claiming that Grantor did not have the right to transfer all or part of the Property to Grantee.

(c) Grantee has been allowed to make an inspection of the Property. **GRANTEE IS ACCEPTING THE PROPERTY ON AN "AS-IS WITH ALL FAULTS" BASIS WITH ANY AND ALL PATENT AND LATENT DEFECTS, INCLUDING THOSE RELATING TO THE ENVIRONMENTAL CONDITION OF THE PROPERTY, AND IS NOT RELYING ON ANY REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM GRANTOR AS TO ANY MATTERS CONCERNING THE PROPERTY,** including, but not limited to the physical condition of the Property; zoning status; tax consequences of this transaction; utilities; operating history or projections or valuation; compliance with Environmental Laws (defined below) or other laws, statutes, ordinances, decrees, regulations and other requirements applicable to the Property; the presence of any Hazardous Substances (defined below), wetlands, asbestos, lead, lead-based paint or other lead containing structures, urea formaldehyde, or other environmentally sensitive building materials in, on, under, or in proximity to the Property; the condition or existence of any above ground or underground structures or improvements, including tanks and transformers in, on or under the Property; the condition of title to the Property, and the existence of any leases, easements, permits, orders, licenses, or other agreements, affecting the Property.

(d) Grantee acknowledges that portions of the Property are subject to certain environmental remediation under applicable laws and regulations administered and enforced by the Nebraska Department of Environmental Quality (NDEQ Files #062076; UG #07116-MBS-1100). Grantor understands and acknowledges that under applicable NDEQ laws and regulations, Grantor is deemed the responsible party and that it retains responsibility for this ongoing environmental remediation as between Grantor and the NDEQ. However, as between Grantee and Grantor, Grantee shall be solely responsible for all such environmental remediation, and Grantee agrees to assume and perform such environmental remediation, provided that Grantor agrees as the party responsible to NDEQ to: (i) designate Grantee (or at Grantee's discretion, Grantee's contractor) as Grantor's designated representative; (ii) allow

BNSF Lincoln, Lancaster County, NE             3

Grantee to submit a more aggressive remedial action work plan (prepared by Grantee or Grantee's contractor) for completing Grantor's environmental obligations, subject to the review and approval of NDEQ; (iii) allow Grantee or Grantee's contractor to carry out such remedial action work plan as proposed and approved; (iv) allow Grantee or Grantee's contractor, as Grantor's designated representative, to submit requests for and receive direct reimbursement for the approved remedial actions from NDEQ Title 200 funds, or other such available funds; and (v) following completion of such remedial actions, provide Grantee the NDEQ-issued "No Further Action" letter for the property. If NDEQ Title 200 funds are unavailable or insufficient for any reason to complete all remediation, Grantee shall nevertheless be solely responsible for all costs of remediation as between Grantee and Grantor, and Grantee's release and indemnity obligations set forth herein shall include such remediation and any funding shortfalls. Following completion of remediation, Grantee shall cooperate with Grantor to cause NDEQ to look solely to Grantee thereafter. Grantee further acknowledges that Grantor plans to excavate materials from adjacent properties. Grantee shall be responsible for testing, managing, and transporting such material to the Property for stockpiling and future usage, including any necessary treatment and disposal, and Grantee's foregoing release and indemnity expressly includes such excavated materials.

(e)   Grantee represents and warrants to Grantor that Grantee has not relied and will not rely on, and Grantor is not liable for or bound by, any warranties, guaranties, statements, representations or information pertaining to the Property or relating thereto made or furnished by Grantor or any agent representing or purporting to represent Grantor, to whomever made or given, directly or indirectly, orally or in writing.

(f)   If improvements belonging to a third party are discovered on the Property after the date of this Deed, and Grantor determines it has a known license or similar agreement with such third party, then Grantor agrees, at no cost to Grantor, to assign such license or similar agreement to Grantee; provided, however, if such improvements are not covered by an agreement with Grantor, and/or a license or similar agreement cannot be located by Grantor, then Grantor shall notify Grantee of such in writing. Upon such assignment or notification, Grantor shall have no further obligations with respect to such improvements.

(g)   Except as expressly provided herein, Grantor shall have no obligations with respect to any improvements or other materials remaining on the Property on or after Grantor's quitclaim of the Property to Grantee. Except with respect to the Removed Tracks & Ties, Grantor shall not be responsible for removal or disposal of tracks or ties, or any costs of track and tie removal or disposal, for or from the Property.

(h)   To the fullest extent permitted by law, Grantee waives its municipal immunity and its sovereign immunity with respect to Grantor for matters arising out of or related to this Deed and the property conveyance contemplated herein, including, without limitation, for environmental and other conditions of the Property. Any lawful waiver of Grantee's sovereign immunity herein shall be in addition to, and not in limitation of, any lawful waiver of Grantee's municipal immunity and its sovereign immunity pursuant to separate agreements between Grantor and Grantee.

(i)   To the fullest extent permitted by law, Grantee assumes the risk that Hazardous Substances or other adverse violations of Environmental Laws may affect the Property and other land acquired and/or developed by Grantee as part of the acquisition of the Property, and

BNSF Lincoln, Lancaster County, NE                             4

to the fullest extent allowed by law hereby indemnifies, defends and holds harmless and hereby waives, releases and discharges forever Grantor and Grantor's officers, directors, employees and agents (collectively, "**Grantor Indemnitees**") from any and all present or future claims or demands, and any and all damages, losses, injuries, liabilities, causes of actions (including, without limitation, causes of action in tort) costs and expenses (including, without limitation fines, penalties and judgments, and attorneys' fees to the extent permitted by law) of any and every kind or character, known or unknown, arising from or in any way related to Hazardous Substances or other adverse violations of Environmental Laws of the Property and any other land acquired and/or developed by Grantee as part of the acquisition of the Property, including the alleged presence, use, storage, generation, manufacture, transport, release, leak, spill, disposal or other handling of any Hazardous Substances in, on or under the Property or such other property (collectively, the "**Grantor Losses**"). "Grantor Losses" shall include without limitation (i) the cost of any investigation, removal, remedial or other response action that is required by any Environmental Law, that is required by judicial order or by order of or agreement with any governmental authority, or that is necessary or otherwise is reasonable under the circumstances, (ii) capital expenditures necessary to cause Grantor's remaining property or the operations or business of Grantor on its remaining property to be in compliance with the requirements of any Environmental Law, and (iii) losses for injury or death of any person, and (iv) losses arising under any Environmental Law enacted after transfer. The rights of Grantor under this section shall be in addition to and not in lieu of any other rights or remedies to which it may be entitled under this document or otherwise. This indemnity specifically includes the obligation of Grantee to remove, close, remediate, reimburse or take other actions requested or required by any governmental agency concerning any Hazardous Substances on the Property or such other property. **ALL INDEMNITY OBLIGATIONS OF GRANTEE UNDER THIS SECTION (i) SHALL INCLUDE GRANTOR LOSSES CAUSED BY GRANTOR PRIOR TO THE DATE OF THIS DEED, INCLUDING WITHOUT LIMITATION ANY NEGLIGENCE OF GRANTOR**, but shall exclude all cost, liability, or expense actually incurred by Grantor arising out of the condition of such property to the extent such condition is caused, contributed to, exacerbated or aggravated by Grantor after the date of conveyance.

(j)   For purposes of this Deed:

(i)   "**Environmental Law(s)**" means any federal, state or local statute, regulation, code, rule, ordinance, order, judgment, decree, injunction or common law pertaining in any way to the protection of human health or the environment, including without limitation, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Toxic Substances Control Act, and any similar or comparable state or local law.

(ii)   "**Hazardous Substance(s)**" means any hazardous, toxic, radioactive or infectious substance, material or waste as defined, listed or regulated under any Environmental Law, and includes without limitation petroleum oil and any of its fractions.

(iii)   "**Environmental Matters**" means matters relating to the generation, manufacture, use, storage, handling, transportation and/or disposal of Hazardous Substances, or conditions with respect to the atmosphere, soil, surface and ground waters, wetlands, stream sediments, vegetation, endangered species and storm water runoff or discharge.

The covenants and agreements set forth in paragraphs (a) through (j), above, shall be binding upon Grantee and its heirs, successors and assigns, and shall be covenants running with the land benefiting Grantor and its heirs, successors and assigns.

**TO HAVE AND TO HOLD** the Property unto the said Grantee, its successors and assigns, forever.

*[Signature page follows]*

IN WITNESS WHEREOF, the said Grantor has caused this instrument to be signed by its authorized representative, attested by its Assistant Secretary, and its corporate seal to be affixed hereto on the 12th day of May, 2011.

BNSF RAILWAY COMPANY

By: *[signature]*
Mark D. Ude
Its: AVP
Corporate Real Estate Development

ATTEST:

By: *[signature]*
Patricia Zbichorski
Its: Assistant Secretary

ACCEPTED:

WEST HAYMARKET JOINT PUBLIC AGENCY

By: *[signature]*
Name: Chris Connolly
Title: Ass't City Attorney

ATTEST:

By: *[signature]*
Name: Tori Olsen
Title: Commercial Coordinator

STATE OF NEBRASKA     §
                      § ss.
COUNTY OF LANCASTER   §                                    ~CJC~

On this _____ day of __Not applicable__, 2011, before me, the undersigned, a Notary Public in and for said County, personally came _____ and _____ of _____, a _____ corporation, to me personally known to be the _____ and _____, respectively, and are the identical persons whose names are affixed to the above conveyance; and acknowledged the acceptance thereof to be their voluntary act and deed as such officers and the voluntary act and deed of said corporation and that the Corporate seal of the said corporation was thereto affixed by its authority.

Witness my hand and Notarial Seal at _____ in said county the day and year last above written.

                                    _____
                                    Notary Public

                        My commission expires: _____


STATE OF TEXAS        §
                      §
COUNTY OF TARRANT     §

This instrument was acknowledged before me on __May 9th__, 20_11_ by Mark D. Ude and Patricia Zbichorski, as the AVP Corporate Real Estate Development and Assistant Secretary, respectively, of **BNSF Railway Company**, a Delaware corporation, on behalf of said corporation.

{Seal}   JOYIA E. SIMMONS
         Notary Public
         STATE OF TEXAS
         My Comm. Exp. 03/11/2012

         _Joyia E. Simmons_
              Notary Public

FORM APPROVED BY LAW

| APPROVED LEGAL | |
|---|---|
| APPROVED FORM | |
| APPROVED | |

BNSF Lincoln, Lancaster County, NE          8

8

EXHIBIT A

LEGAL DESCRIPTION

CITY OF LINCOLN CLOSING NO. 2

A TRACT OF LAND COMPOSED OF ALL OF LOTS 3 THRU 14, PART OF LOTS 2 & 15 AND PART OF THE EAST/WEST ALLEY ADJACENT IN BLOCK 270, ORIGINAL TOWN, PART OF LOTS 1 THRU 3, AND PART OF LOTS 8 THRU 12, PART OF THE EAST/WEST ALLEY ADJACENT IN BLOCK 281, ORIGINAL TOWN, PART OF THE DEPOT LOT, ORIGINAL TOWN, A PART OF "O" STREET RIGHT-OF-WAY, A PART OF "S" STREET RIGHT-OF-WAY, A PART OF "T" STREET RIGHT-OF-WAY, A PART OF 6TH STREET RIGHT-OF-WAY, AND A PART OF 7TH STREET RIGHT-OF-WAY, LOCATED IN THE SOUTHWEST QUARTER OF SECTION 23, ALSO A PART OF "O" STREET RIGHT-OF-WAY LOCATED IN THE NORTHWEST QUARTER OF SECTION 26, ALL IN TOWNSHIP 10 NORTH, RANGE 6 EAST OF THE 6TH PM LANCASTER COUNTY, CITY OF LINCOLN, NEBRASKA, AND IS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING FROM THE NORTHWEST CORNER OF BLOCK 50, ORIGINAL TOWN; THENCE ON AN ASSUMED BEARING OF SOUTH 89 DEGREES 43 MINUTES 39 SECONDS EAST, ALONG THE NORTH LINE OF SAID BLOCK 50, A DISTANCE OF 245.65 FEET TO **THE TRUE POINT OF BEGINNING**; THENCE NORTHEASTERLY A DISTANCE OF 203.61 FEET ALONG A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1175.09 FEET, A CENTRAL ANGLE OF 9 DEGREES 55 MINUTES 39 SECONDS, WITH A CHORD BEARING OF NORTH 5 DEGREES 18 MINUTES 38 SECONDS EAST, AND A CHORD DISTANCE OF 203.35 FEET TO A POINT; THENCE NORTH 00 DEGREES 20 MINUTES 48 SECONDS EAST, A DISTANCE OF 1177.82 FEET TO A POINT OF CURVATURE; THENCE NORTHEASTERLY A DISTANCE OF 216.43 FEET ALONG A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1438.18 FEET, A CENTRAL ANGLE OF 8 DEGREES 37 MINUTES 21 SECONDS, WITH A CHORD BEARING OF NORTH 04 DEGREES 39 MINUTES 29 SECONDS EAST, AND A CHORD DISTANCE OF 216.23 FEET TO A POINT; THENCE NORTH 08 DEGREES 58 MINUTES 08 SECONDS EAST, A DISTANCE OF 146.73 FEET TO A POINT OF CURVATURE; THENCE NORTHEASTERLY A DISTANCE OF 163.52 FEET ALONG A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 710.67 FEET, A CENTRAL ANGLE OF 13 DEGREES 10 MINUTES 59 SECONDS, WITH A CHORD BEARING OF NORTH 15 DEGREES 33 MINUTES 38 SECONDS EAST, AND A CHORD DISTANCE OF 163.16 FEET TO A POINT; THENCE NORTH 22 DEGREES 09 MINUTES 07 SECONDS EAST, A DISTANCE OF 108.75 FEET TO A POINT OF CURVATURE; THENCE NORTHEASTERLY A DISTANCE OF 80.64 FEET ALONG A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 751.06 FEET, A CENTRAL ANGLE OF 6 DEGREES 09 MINUTES 07 SECONDS, WITH A CHORD BEARING OF NORTH 25 DEGREES 13 MINUTES 40 SECONDS EAST, AND A CHORD DISTANCE OF 80.60 FEET TO A POINT; THENCE NORTH 28 DEGREES 18 MINUTES 14 SECONDS EAST, A DISTANCE OF 66.94 FEET TO A POINT OF CURVATURE; THENCE NORTHEASTERLY A DISTANCE OF 250.03 FEET ALONG A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 603.80 FEET, A CENTRAL ANGLE OF 23 DEGREES 43

MINUTES 32 SECONDS, WITH A CHORD BEARING OF NORTH 40 DEGREES 09 MINUTES 59 SECONDS EAST, AND A CHORD DISTANCE OF 248.24 FEET TO A POINT; THENCE NORTH 52 DEGREES 01 MINUTES 44 SECONDS EAST, A DISTANCE OF 56.51 FEET TO A POINT OF CURVATURE; THENCE NORTHEASTERLY A DISTANCE OF 76.69 FEET ALONG A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1043.25 FEET, A CENTRAL ANGLE OF 4 DEGREES 12 MINUTES 42 SECONDS, WITH A CHORD BEARING OF NORTH 49 DEGREES 55 MINUTES 23 SECONDS EAST, AND A CHORD DISTANCE OF 76.67 FEET TO A POINT OF CURVATURE; THENCE SOUTHWESTERLY A DISTANCE OF 459.77 FEET ALONG A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1060.15 FEET, A CENTRAL ANGLE OF 24 DEGREES 50 MINUTES 53 SECONDS, WITH A CHORD BEARING OF SOUTH 12 DEGREES 45 MINUTES 47 SECONDS WEST, AND A CHORD DISTANCE OF 456.17 FEET TO A POINT; THENCE SOUTH 00 DEGREES 20 MINUTES 21 SECONDS WEST, A DISTANCE OF 1401.16 FEET TO A POINT; THENCE NORTH 89 DEGREES 54 MINUTES 08 SECONDS WEST, A DISTANCE OF 49.41 FEET TO A POINT; THENCE SOUTH 00 DEGREES 05 MINUTES 52 SECONDS WEST, A DISTANCE OF 559.87 FEET TO A POINT ON THE NORTH LINE OF BLOCK 51, ORIGINAL TOWN; THENCE NORTH 89 DEGREES 43 MINUTES 39 SECONDS WEST, ALONG THE NORTH LINE OF BLOCKS 51 AND 50, A DISTANCE OF 321.15 FEET TO THE POINT OF BEGINNING. SAID TRACT CONTAINS A CALCULATED AREA OF 705159.39 SQUARE FEET (16.19 ACRES) MORE OR LESS.

AND ALSO:

A TRACT OF LAND COMPOSED OF ALL OF LOT 9 AND A PART OF LOTS 8, 10, 14 AND 15, AND A PART OF THE EAST/WEST ALLEY ADJACENT IN BLOCK 50, ORIGINAL TOWN, A PART OF "N" STREET RIGHT-OF-WAY, AND A PART OF "O" STREET RIGHT-OF-WAY LOCATED IN THE NORTHWEST QUARTER OF SECTION 26, AND PART OF THE DEPOT LOT, ORIGINAL TOWN, AND PART OF "O" STREET RIGHT-OF-WAY, LOCATED IN THE SOUTHWEST QUARTER OF SECTION 23, ALL IN TOWNSHIP 10 NORTH, RANGE 6 EAST OF THE 6TH PM LANCASTER COUNTY, CITY OF LINCOLN, NEBRASKA, AND IS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING FROM THE INTERSECTION OF THE CENTERLINE OF "N" STREET AND THE CENTERLINE OF 5TH STREET; THENCE ON AN ASSUMED BEARING OF SOUTH 89 DEGREES 44 MINUTES 29 SECONDS EAST, ALONG THE CENTERLINE OF SAID "N" STREET, A DISTANCE OF 127.69 FEET TO **THE TRUE POINT OF BEGINNING**; THENCE NORTH 04 DEGREES 07 MINUTES 53 SECONDS WEST, A DISTANCE OF 176.78 FEET TO A POINT; THENCE NORTH 00 DEGREES 04 MINUTES 24 SECONDS EAST, A DISTANCE OF 983.82 FEET TO A POINT; THENCE NORTH 89 DEGREES 55 MINUTES 36 SECONDS WEST, A DISTANCE OF 10.50 FEET TO A POINT; THENCE NORTH 00 DEGREES 04 MINUTES 24 SECONDS EAST, A DISTANCE OF 120.00 FEET TO A POINT; THENCE SOUTH 89 DEGREES 55 MINUTES 36 SECONDS EAST, A DISTANCE OF 25.50 FEET TO A POINT; THENCE NORTH 00 DEGREES 04 MINUTES 24 SECONDS EAST, A DISTANCE OF 235.53 FEET TO A POINT OF CURVATURE; THENCE NORTHEASTERLY A DISTANCE OF 74.42 FEET ALONG A NON-TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 1004.59 FEET, A CENTRAL ANGLE OF 4 DEGREES 14 MINUTES 40 SECONDS, WITH A CHORD BEARING OF NORTH 14 DEGREES 34 MINUTES 39 SECONDS EAST, AND A CHORD DISTANCE OF 74.40 FEET TO A POINT; THENCE NORTH 16 DEGREES 41 MINUTES 59 SECONDS EAST A DISTANCE OF 89.60 FEET TO A POINT OF

CURVATURE; THENCE SOUTHWESTERLY A DISTANCE OF 71.58 FEET ALONG A NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 1075.06 FEET, A CENTRAL ANGLE OF 3 DEGREES 48 MINUTES 53 SECONDS, WITH A CHORD BEARING OF SOUTH 02 DEGREES 07 MINUTES 16 SECONDS WEST, AND A CHORD DISTANCE OF 71.57 FEET TO A POINT; THENCE SOUTH 00 DEGREES 13 MINUTES 22 SECONDS WEST A DISTANCE OF 1476.42 FEET TO A POINT OF CURVATURE; THENCE SOUTHWESTERLY A DISTANCE OF 81.17 FEET ALONG A TANGENT CURVE TO THE RIGHT HAVING A RADIUS OF 704.92 FEET, A CENTRAL ANGLE OF 6 DEGREES 35 MINUTES 52 SECONDS, WITH A CHORD BEARING OF SOUTH 03 DEGREES 31 MINUTES 19 SECONDS WEST, AND A CHORD DISTANCE OF 81.13 FEET TO A POINT; THENCE SOUTH 06 DEGREES 49 MINUTES 15 SECONDS WEST, A DISTANCE OF 45.03 FEET TO A POINT ON THE CENTERLINE OF SAID "N" STREET; THENCE NORTH 89 DEGREES 44 MINUTES 29 SECONDS WEST, ALONG THE CENTERLINE OF SAID "N" STREET, A DISTANCE OF 29.73 FEET TO THE POINT OF BEGINNING. SAID TRACT CONTAINS A CALCULATED AREA OF 82058.38 SQUARE FEET (1.88 ACRES) MORE OR LESS.

AND ALSO:

A TRACT OF LAND COMPOSED OF A PART OF VACATED "T" STREET RIGHT-OF-WAY (ORD # 8328), LOCATED IN THE SOUTHWEST QUARTER OF SECTION 23, TOWNSHIP 10 NORTH, RANGE 6 EAST OF THE 6TH PM LANCASTER COUNTY, CITY OF LINCOLN, NEBRASKA, AND IS MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING FROM THE SOUTHWEST CORNER OF BLOCK 8, ORIGINAL TOWN OF LINCOLN, SAID POINT ALSO BEING THE INTERSECTION OF THE NORTH RIGHT-OF-WAY LINE OF "T" STREET AND THE EAST RIGHT-OF-WAY LINE OF 7TH STREET; THENCE ON AN ASSUMED BEARING OF NORTH 89 DEGREES 46 MINUTES 22 SECONDS WEST, ALONG THE NORTH RIGHT-OF-WAY LINE OF SAID "T" STREET, A DISTANCE OF 46.01 FEET TO **THE TRUE POINT OF BEGINNING**; THENCE SOUTH 00 DEGREES 13 MINUTES 38 SECONDS WEST, A DISTANCE OF 90.00 FEET TO A POINT; THENCE NORTH 89 DEGREES 46 MINUTES 25 SECONDS WEST, A DISTANCE OF 58.05 FEET TO A POINT; THENCE NORTH 38 DEGREES 16 MINUTES 32 SECONDS EAST, A DISTANCE OF 69.84 FEET TO A POINT; THENCE NORTH 00 DEGREES 13 MINUTES 38 SECONDS EAST, A DISTANCE OF 35.00 FEET TO A POINT ON THE NORTH LINE OF VACATED "T" STREET; THENCE NORTH 89 DEGREES 46 MINUTES 22 SECONDS EAST, ALONG THE NORTH LINE OF VACATED "T" STREET RIGHT-OF-WAY, A DISTANCE OF 15.00 TO THE POINT OF BEGINNING. SAID TRACT CONTAINS A CALCULATED AREA OF 2533.77 SQUARE FEET (0.06 ACRES) MORE OR LESS.



12



13