IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LARRY M. BALL, | ) | CASE NO:8:15CV95 |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLAINTIFF'S BRIEF IN OPPOSITION |
| v. | ) | TO DEFENDANTS' MOTION TO |
| | ) | DISMISS CHRIS BEUTLER |
| CITY OF LINCOLN, CHRIS BEUTLER, | ) | AND JAMES PESCHONG |
| Mayor of the City of Lincoln, JAMES | ) | |
| PESCHONG, Lincoln Chief of Police, | ) | |
| and SMG, a Pennsylvania General | ) | |
| Partnership, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This case poses a simple question: may, consistent with the First Amendment to the Constitution of the United States, the City of Lincoln censor religious literature on a public sidewalk? A number of material questions of fact and law exist each with grave implications for the health of the First Amendment. Defendants Chris Beutler and James Peschong are the Mayor of the City of Lincoln and the Lincoln Chief of Police respectively. They both knew that Mr. Ball had been restrained from handing out religious literature on public property and/or they knew of SMG's illegal policy. Chris Beutler is the public official ultimately responsible for SMG's illegal policy and it was his duty to ensure compliance with the Constitution of the United States. James Peschong is the public official ultimately responsible for the enforcement of SMG's illegal policy, i.e., Mr. Ball's unlawful arrest and/or issuance of citations, and it was his duty to ensure that the enforcement of SMG's policy was consistent with the Constitution. Therefore, Chris Beutler and James Peschong are not due judgment as a matter of law on the basis of Qualified Immunity or Failure to State a Claim.

Larry M. Ball, is a citizen of Lancaster County, Nebraska and he regularly distributes religious literature and proselytizes to bring people to Jesus.  His ability to reach people arriving at and departing from the Arena has been severely degraded by the actions of SMG and the City of Lincoln. SMG's "use policy", while in a sense content neutral, in reality allows SMG and their customers to exclude views they disagree with from a traditional public forum, while retaining the profits gained from solicitation occurring on the exact same sidewalks.  The actions of Lincoln and its police department raise the specter of viewpoint discrimination, the least favored form of Censorship.

**STANDARD OF REVIEW**
**ARGUMENT AND AUTHORITIES**

There can be little doubt that the punishment inflicted upon Mr. Ball by City officials was unlawful. To the extent that any doubt exists, it is created by factual uncertainties about what actually occurred. Trials are designed to cut through this fog and vindicate the rights of the involved parties. At this point the facts indicate that both Defendant Chris Beutler and Defendant James Peschong should be held liable for the First Amendment violations perpetrated against Mr. Ball. At the very least the potential applicability of these First Amendment arguments and the existence of disputed material facts should prohibit the granting of Defendants' Motion to Dismiss at this time.

**I.**

**CHRIS BEUTLER AND JAMES PESCHONG**
**ARE NOT DUE QUALIFIED IMMUNITY**

Courts apply a two part test to determine the applicability of qualified immunity: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right;

and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Santiago v. Blair*, 707 F.3d 984, 989 (8th Cir. 2013). Government agents who violate a citizen's rights are immune from suit unless a reasonable fact-finder could answer both of the above questions affirmatively. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). If, in the instant case, the allegations in Plaintiff's complaint are proven true, then it will have been conclusively demonstrated that the actions of the City of Lincoln and the Lincoln Police Department violated Mr. Ball's right to freedom of speech. Since the complaint establishes the potential liability of Lincoln and Lincoln Police Department, it also establishes the potential liability of Chris Beutler and James Peschong (defendants). Defendants knew of SMG's policy and knew of Mr. Ball's arrest and/or issuance of citations.  At the very least the allegations in the complaint allow a rational fact-finder to infer that Defendants failed to properly train and/or supervise their subordinates.

###### A.      Defendants' Actions Clearly Violate the First Amendment

Defendants cannot escape liability by shunting responsibility for their First Amendment violations onto SMG and then disclaiming any connections with SMG's policies. SMG's policies are the policies of the City of Lincoln, the City of Lincoln Police Department, and of Defendants for the purposes of First Amendment analysis. The enforcement of SMG's private restrictions on speech by City Police provides the necessary nexus between the state and the challenged act:

> Here, the city's role was far more than "mere acquiescence," for the city not only provided critical assistance in planning and operating the show, but also played an active role in enforcing the particular speech restrictions challenged in this action. City police, not Salute volunteers, enforce the restrictions every year, a role that Captain Martin characterized as part of "the agreement that's in place" with Salute. The active and prearranged role of the police in effectuating the event's private speech policies also sets this case apart from *Lansing v. City of Memphis*,

202 F.3d 821 (6th Cir.2000), another case relied on by Salute. In Lansing, the court specifically noted that the *City of Memphis* had made no attempt to instruct its officers on how to police unwanted speech activities on festival grounds. Id. at 833-34.

The direct role of the Columbia police in enforcing Salute's speech restrictions provided the critical nexus, absent in other cases, between the challenged conduct and the exercise of state authority.4 See, e.g., Gaston, 43 F.3d at 909 n. 4 (appellant conceded absence of nexus); see also *D'Amario v. Providence Civic Ctr. Auth.*, 783 F.2d 1, 3 (1st Cir.1986) (city officials' enforcement of private speech restriction provides requisite nexus between alleged deprivation and state involvement). *Wickersham v. City of Columbia*, 481 F.3d 591, 598 (8th Cir. 2007).

Beyond the enforcement of SMG's policies by Lincoln Police, the City also directly profits from SMG's unconstitutional policies making Lincoln and SMG joint actors:

"For joint action to exist, there must be willful, joint participation between the state and private actors in which "the state knowingly accepts the benefits derived from unconstitutional behavior." *Florer*, 639 F.3d at 926 (citations and quotations omitted). "The joint action test is not satisfied absent willful joint participation, ... where the state was in 'a position of interdependence with the private entity.' " Id. at 927 (citations omitted)." *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1249 (D. Or. 2013), appeal dismissed (July 26, 2013).

The City of Lincoln is complicit in SMG's actions because it allowed SMG to exclude all speech activities from the Arena plazas and sidewalks except for authorized solicitation, and it directly profited from the contract with SMG. "Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." *United States v. Grace*, 461 U.S. 171, 179, 103 S. Ct. 1702, 1708, 75 L. Ed. 2d 736 (1983). The sidewalks surrounding the arena are incorporated into

the city's streets and sidewalks and there is no indication to the public that these areas are distinct and "the average observer would be unfamiliar with the geographic significance" *United Church of Christ v. Gateway Econ. Dev. Corp.*, 383 F.3d 449, 452 (6th Cir. 2006). of features which supposedly separate SMG controlled "walkways" from city controlled sidewalks.

A sidewalk does not lose its protected status simply because it abuts government property that is not a public forum. *Grace*, 461 U.S. at 180.   The government cannot "transform the character of the property by the expedient of including it within the definition of what might be considered a nonpublic forum parcel of property." *Id.*  See also *Jankowski v. City of Duluth*, 2012 U.S. Dist. LEXIS 172490, *9 (D. Minn. 2012) (law is clear that a city cannot change a traditional public forum by its own *ipse dixit*). Determining whether the Plaza and walkways abutting the arena are public fora will require further factual inquiry and to the extent that these facts are in dispute they constitute disputed material facts and preclude the granting of a motion to dismiss as to Chris Beutler and James Peschong.

**B.    Mr. Ball's First Amendment Right to Hand Out Religious Literature was Clearly Established**

The City dismissed the initial trespass citation after reading Mr. Ball's briefs and therein they were informed that sidewalks are traditional public fora. Not only were City officials directly informed by Mr. Ball's brief, they also were aware (or should have been aware) of numerous cases such as *Lewis v. Colorado Rockies Baseball Club* where walkways surrounding arenas have been ruled public fora; *Lewis*  involved a number of street vendors who attempted to sell unauthorized programs and other souvenirs on the sidewalks and walkways surrounding Coors Field.  *Lewis v. Colorado Rockies Baseball Club,* 941 P.2d 266, 269 (Colo. 1997) (en

5

banc). The vendors were ticketed for trespass and brought suit.  *Id*. at 269-270.  While the Colorado Rockies were a private entity, Coors Field and the surrounding sidewalks were owned by the state, and thus the First Amendment applied.  *Id*. at 272. The integration of the plaza and walkways surrounding the arena into the city's grid, and the frequent use of these passages by pedestrians who have no business within the arena, should indicate to any reasonable public official that the disputed areas are public fora for the purposes of First Amendment analysis. Knowledge of SMG's policies and Mr. Ball's arrest should be charged to Chris Beutler and James Peschong because they are the heads of their respective state agencies. Even if this knowledge cannot be charged to them by fiat, Plaintiff contends that they had personal knowledge of SMG's policies and of Mr. Ball's repeated arrests or being issued citations.

The Nebraska Supreme Court has found that to the extent that Chris Beutler and James Peschong exceeded their authority as public officials, they may be held individually liable: "In addressing this issue, we have stated that an action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the state and is not prohibited by sovereign immunity." *Doe v. Bd. of Regents of Univ. of Nebraska*, 280 Neb. 492, 511, 788 N.W.2d 264, 281 (2010). While it is true that later in the opinion the court stated that when public funds are sought as a remedy, or where a plaintiff seeks to force an affirmative act on the part of a public officer, sovereign immunity is implicated. However as to the defendants in their individual capacity, the state of Nebraska's interests are not directly implicated because Defendants exceeded their authority and therefore they may be held individually liable.

6

## II.

## AN OFFICIAL POLICY OR CUSTOM OF THE CITY OF LINCOLN AND OF THE LINCOLN POLICE DEPARTMENT CAUSED THE VIOLATION OF MR. BALL'S FIRST AMENDMENT RIGHTS

SMG's "use policy" should be considered the policy of the Lincoln Police Department because Lincoln police officers not only arrested Mr. Ball and issued citations to him in accordance with said policy, they also carried a copy of it with them and read it to Mr. Ball prior to citations being issued against him. The repeated enforcement of this policy by the Lincoln Police department creates a custom or policy of violating the Constitutional rights of those who attempt to speak on the public sidewalks surrounding the arena. Chief of Police James Peschong either formulated the policy (City enforcement of SMG's "use policy), knew of it, or failed to train and or supervise his subordinates. Because James Peschong is the head of the Lincoln Police Department his discretionary acts are the policy of the Department and therefore no written policy is required. The City of Lincoln is liable because of both the aforementioned enforcement of SMG's policy but also because of the formulation of the policy itself. Lincoln directly profits from SMG's policy and has had a hand in both its formulation and enforcement. SMG would have no dominion over the arena absent a contract with the City, and in that Contract the City of Lincoln did not take proper steps to assure that the constitutional rights of their citizens would be protected. Mayor Chris Beutler personally failed to assure that the rights of his constituents would be protected when he was negotiating SMG's contract. Additionally he knew of SMG's policy and/or failed to train or supervise his subordinates. As Mayor, Chris Beutler's discretionary acts are the policy of the City and therefore the City has a policy or custom of violating the First Amendment.

7

The 8th Circuit recently had an opportunity to review the issue of when deliberate indifference may constitute a policy or custom:

> However, in some circumstances, official policy that is deliberately indifferent to unconstitutional conduct may satisfy the "shocks the conscience" standard required by Lewis. 523 U.S. at 850 n. 10, 118 S.Ct. 1708 ("[w]e have also employed deliberate indifference as a standard of culpability sufficient to identify a dereliction as reflective of municipal policy and to sustain a claim of municipal liability for ... harm by unconstitutional conduct for which [an employee] would be individually liable") (citing *City of Canton v. Harris*, 489 U.S. at 388-89, 109 S.Ct. 1197). We therefore must consider whether Elwood's official decision to enter into the confidential settlement agreement with Kluck is a policy that is so deliberately indifferent to a predictable constitutional violation that it shocks the conscience. *Johnson v. Outboard Marine Corp*., 172 F.3d at 536; See *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999) (Mettler ). While "a single incident normally does not suffice to prove the existence of a [school district's] custom," *Mettler*, 165 F.3d at 1205, "[a school district's] liability may be imposed for a single decision by [school] policymakers under appropriate circumstances," Pembaur, 475 U.S. at 480, 106 S.Ct. 1292, because "even a single decision by such a body unquestionably constitutes an act of official government policy." Id.
>
> If Elwood instituted a policy or custom which deprived Kelly of his constitutional right, then Shrum must illustrate that "the [school district's] action was taken with deliberate indifference as to its known or obvious consequences." Brown, 520 U.S. at 398, 117 S.Ct. 1382. In addition, Shrum must show a direct causal link, indicating that the policy or custom is "the moving force [behind] the constitutional violation," Mettler, 165 F.3d at 1204 (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Because *780 we apply a stringent standard of fault, Elwood's action must have been highly likely to inflict the particular injury suffered by Kelly. Brown, 520 U.S. at 410, 117 S.Ct. 1382. The culpability standard and the causation standard are intertwined, because "[t]he high degree of predictability may also support an inference of causation-that the [school district's] indifference led directly to the very consequence that was so predictable." Id. *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 779 80 (8th Cir. 2001).

Because SMG is acting jointly with the City of Lincoln for the purpose of Arena management, its acts are the City's acts. "For joint action to exist, there must be willful, joint participation between the state and private actors in which "the state knowingly accepts the benefits derived

8

from unconstitutional behavior." Florer, 639 F.3d at 926 (citations and quotations omitted). "The joint action test is not satisfied absent willful joint participation, ... where the state was in 'a position of interdependence with the private entity.' " Id. at 927 (citations omitted)." *Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1249 (D. Or. 2013), appeal dismissed (July 26, 2013). It cannot be disputed that the City has directly benefitted from its relationship with SMG. An integral part of SMG's management of the arena is determining public use policies for the areas surrounding the Arena. The policy at issue in this case provides for private solicitation in the plaza area by those who contract with SMG. This provides a direct financial benefit to SMG and to the City. Individuals working for the City and for the Lincoln Police Department were aware of SMG's policies. This knowledge should be charged to Chris Beutler and James Peschong because they are the heads of the respective state agencies. Even if this knowledge cannot be charged to them by fiat, Plaintiff contends that they had personal knowledge of SMG's policies and of Mr. Ball's repeated arrests.

SMG may have some business justification for excluding citizen speech from the publicly owned plazas and walkways surrounding the arena, however: "A municipal corporation and its officers may not shield themselves against claimed civil rights violations by enveloping their conduct with the cloak of proprietary activity, particularly when the government involvement and control is as pervasive as that demonstrated in this action." *Penthouse Int'l LTD. v. Putka*, 436 F. Supp. 1220, 1226 (N.D. Ohio 1977).

## CONCLUSION

The clearly established law on which Plaintiff relies includes authority from the U.S. Supreme Court as well as the 8th Circuit and sister circuit courts across the country.  Defendants

9

have no immunity for their acts in creating a policy, supporting that policy with the force of

police arrests and issuance of citations, and maintaining a censorship zone on public land.

Therefore, the Defendants' Motion to Dismiss should be denied in its entirety.

LARRY M. BALL, Plaintiff

BY:    s/ Thomas M. White_____
Thomas M. White, #17452
C. Thomas White # 14488
Amy S. Jorgensen, #23215
WHITE & JORGENSEN
209 S. 19th Street, Suite 310
Omaha, NE 68102
(402) 346-5700

and

Amy Miller, #21050
ACLU of Nebraska
941 O Street, #706
Lincoln, NE 68508
(402) 476-8091

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to Jeffery R. Kirkpatrick, 555 South 10th Street, Suite 300, Lincoln, NE 68508.

s/Thomas M. White_____

10